UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TABITHA HARDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-cv-0171-MTS |
| | ) |
| LELAND DUDEK,[1] *Acting Commissioner* | ) |
| *of the Social Security Administration*, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration, denying the application of Tabitha Hardy ("Plaintiff") for Supplemental Security Income ("SSI").[2] On September 10, 2018, Plaintiff applied for SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385 ("the Act")

---

[1] Leland Dudek is now the Acting Commissioner of the SSA. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper Defendant.

[2] Section 405(g) provides for judicial review of the SSA Commissioner's "final decision." 42 U.S.C. § 405(g). Plaintiff first applied for SSI benefits on July 30, 2015, alleging an onset date of March 13, 2015. (Tr. 2382-2390; 2391). It is unclear what resulted from that application. As to the September 2018 application, an ALJ concluded Plaintiff was not disabled under the Act on February 25, 2020. (Tr. 12-28). After Plaintiff filed a complaint in this Court, (Tr. 2096-2106), the case was remanded for consideration of "Plaintiff's medical treatment for degenerative disc disease" on October 04, 2021. (Tr. 2107-2108). After the ALJ's decision but prior to remand, Plaintiff filed subsequent applications for SSI benefits on February 11, 2021, (Tr. 1979, 2247-2262), and May 12, 2021. (Tr. 2368-2374). The May 2021 application was disapproved on September 21, 2021. (Tr. 2263-2267). However, on June 10, 2022, the SSA determined that Plaintiff was entitled to benefits, starting in November 2021, pursuant to a request for reconsideration dated May 10, 2022, as to the February 2021 application. (Tr. 2247-2262). The transcript before the Court does not contain either a February 2021 application or the May 10, 2022, request for reconsideration.

The ALJ's October 04, 2023, decision attempts to clarify the Plaintiff's filings and the SSA's position on Plaintiff's applications. The ALJ found that the June 10, 2022, determination was erroneous for lack of jurisdiction and contrary to the Appeals Council's directions. (Tr. 1980). The ALJ then found that Plaintiff's applications must be consolidated and found that Plaintiff ultimately alleges a disability onset date of September 02, 2017. (Tr. 1981). Before this Court is this second ALJ's conclusion, on Plaintiff's pending applications, that Plaintiff is not disabled. (Tr. 1976-2007). There is no dispute that the Acting SSA Commissioner has now issued a final decision that is reviewable under 28 U.S.C. § 405(g).

1

alleging a disability onset date of September 02, 2017. (Tr. 182-185). On October 04, 2023, the ALJ found Plaintiff was not disabled under § 1161(a)(3)(A) of the Act through the date of the decision. (Tr. 1998). The ALJ found that, although Plaintiff suffered from severe impairments including degenerative disc disease involving the cervical, thoracic, and lumbar spines, seizure disorder, affective disorder, personality disorder, and posttraumatic stress disorder, Plaintiff was capable of performing light work with some functional, postural, and environmental limitations, and that sufficient jobs existed in the national economy that Plaintiff could have performed. (Tr. 1983-1998). For the reasons that follow, the Court will reverse the decision of the Acting Commissioner and remand this matter for further consideration.

**I.**     **Standard of Review and Legal Framework**

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. Baker *v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 1382c(a)(3)(B).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at

§§ 404.1520(a)–(d).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5.  *Id.* at § 416.920(e).  At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545.  The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).  At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with the physical demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*

The Court's role on judicial review is to decide whether the ALJ's determination is supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if substantial evidence would have supported an opposite decision or the reviewing court might have reached a different conclusion had it been the finder of fact, the Court must affirm the Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher*

*v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because substantial evidence would have supported an opposite decision). The Eighth Circuit has emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)); *see also Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (per curiam). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998), and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

### II.     The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above. At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") during the alleged period of disability. (Tr. 1983). At Step 2, the ALJ found Plaintiff had severe impairments of degenerative disc disease involving the cervical, thoracic, and lumbar spines, seizure disorder, affective disorder, personality disorder, and posttraumatic stress disorder. (Tr. 1983).

At Step 3, the ALJ found Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment. (Tr. 1984-1987). Thus, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with postural, environmental, and physical limitations. (Tr. 1987). Plaintiff can never climb ropes, ladders, or scaffolds but she is able to occasionally climb ramps and stairs. (Tr. 1987). She can occasionally stoop, kneel, crouch and crawl. (Tr. 1987). She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity and vibration and avoid all exposure to hazards

4

such as unprotected heights and moving mechanical parts. (Tr. 1987). She can understand, remember and carry out simple instructions and use judgment to make simple work-related decisions. (Tr. 1987). However, she should not work in a job that requires a specific production rate (such as assembly line work or work that requires hourly quotas). (Tr. 1987). She can occasionally interact with the public where job tasks do not involve adversarial activities such as addressing customer complaints. (Tr. 1987). And she can occasionally interact with co-workers and, after the initial training period (not to exceed 90 days), can occasionally interact with supervisors. (Tr. 1987).

At Step 4, the ALJ found Plaintiff did not have any past relevant work. (Tr. 1996). At Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC and found there were jobs in the national economy that Plaintiff could perform, despite her limitations, such as price marker, router, and housekeeper. (Tr. 1997). Consequently, the ALJ concluded Plaintiff is not disabled under the Act. (Tr. 1998).

### III. Discussion

The specific issues in this case are (1) whether the ALJ properly evaluated opinion evidence; (2) whether the RFC is supported by substantial evidence; and (3) whether the ALJ's assessment of Plaintiff's seizure disorder is inconsistent with the evidence and law.

1. *Opinion Evidence*

Plaintiff argues that the ALJ failed to appropriately analyze Dr. Mark Altomari's October 31, 2018, opinion; Dr. Susan Rosamond's October 31, 2018, opinion; Dr. Dennis McGraw's September 20, 2021, opinion; Dr. Kim Stalker's September 3, 2021, opinion; and Dr. James Morgan's May 10, 2022, opinion. The ALJ "is no longer required to 'give any specific evidentiary weight, including controlling weight, to any medical opinion(s),' including those from treating

5

physicians." *Diana G. v. Kijakazi*, 4:22-cv-1245-JMB, 2024 WL 50805, at *6 (E.D. Mo. Jan. 4, 2024) (quoting 20 C.F.R. § 404.1520c(a)). Rather, ALJs evaluate the persuasiveness of medical opinions by considering several factors, most notably, "(1) whether they are supported by objective medical evidence," and "(2) whether they are consistent with other medical sources."[3] *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). In doing so, the ALJ must explain the supportability and consistency factors, at minimum, and such reference must contain more than "mere reference to the words." *Welch v. Kijakazi*, 2:23-cv-0011-HEA, 2024 WL 578456, at *6 (E.D. Mo. Feb. 13, 2024) (citing *Bibb v. Kijakazi*, 2:21-cv-0070-ACL, 2023 WL 2707439, at *1–8 (E.D. Mo. Mar. 30, 2023)). A general statement that the medical opinion is inconsistent, or not supported, is insufficient. *See Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (holding that an ALJ who stated a doctor's opinion was "internally inconsistent" without identifying the specific inconsistencies was an inadequate articulation of the required factors).

The ALJ found Dr. Altomari's, Dr. Stalker's, and Dr. Rosamond's opinions persuasive.[4] Dr. Altomari opined:

> Claimant may have some limitations regarding ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, due to [symptoms] from [mental health] problems. She also has some limitations regarding ability to set realistic goals or make plans on her own, but [medical evidence of record] does not support that she is precluded from all work, and should be able to sustain the demands of full time work tasks with adherence to [prescriptions, treatment,] and avoidance of substances.

(Tr. 71). Similarly, Dr. Stalker indicated that Plaintiff "retains sufficient mental capacity to carry out two-step commands with adequate persistence and pace" and that she can adapt to predictable

---

[3] In addition to specifically identifying the supporting and consistency factors, the ALJ must also consider the medical source's specialization, relationship to the Plaintiff, among other factors, as necessary. 20 C.F.R. § 404.1520c(c).
[4] Drs. Altomari and Rosamond are consultative examiners who evaluated the medical record upon initial consideration of Plaintiff's 2018 application. (Tr. 60-74). Dr. Stalker also is a consultative examiner who evaluated the medical record upon initial consideration of Plaintiff's subsequent 2021 application. (Tr. 2135-2143).

and gradually introduced change. (Tr. 2142). In addressing these opinions, the ALJ briefly states that Dr. Altomari's opinion is "borne out by the full record," (Tr. 1994), and that Dr. Stalker's and Dr. Altomari's opinions "are consistent with the record as a whole . . . and therefore persuasive." (Tr. 1995). The ALJ then appears to incorporate these Doctors' suggestions in the RFC, indicating that Plaintiff can understand and follow simple instructions and should avoid work with specific production rates. (Tr. 1987).

While the ALJ outlines the medical record prior to these conclusions, she does not give any explanation as to how Drs. Altomari's and Stalker's opinions are consistent with the record or supported by objective medical evidence. Indeed, much of the ALJ's opinion is lacking in specific citation to the record. Accordingly, the ALJ failed to make her "reasoning sufficiently specific to make it clear to any subsequent reviewer" as to why she found these opinions convincing. *Lucas*, 960 F.3d at 1069 (citation and quotation marks omitted). Defendant's current argument that the opinion sufficiently addressed supportability and consistency is unavailing here. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (stating that an agency's decision cannot be upheld on reasons not articulated by the agency in its decision); *Abraham v. Kijakazi*, 1:22-cv-0152-SNLJ, 2023 WL 3948816, *4 (E.D. Mo. June 12, 2023).

The ALJ's assessment of Dr. Rosamond's opinion is only slightly better. Dr. Rosamond opined that Plaintiff is capable of performing light work (lifting/carrying 20 pounds occasionally and 10 pounds frequently and standing/walking for 6 hours and sitting for 6 hours in an 8-hour workday).[5] (Tr. 68-69). The ALJ incorporated Dr. Rosamond's suggestions in the RFC but included additional postural limitations (except as to balancing) and environmental limitations. (Tr. 1991). In assessing the opinion, the ALJ states:

---

[5] *See* 20 C.F.R. § 404.1567(b).

7

> The undersigned has fully considered the medical opinions and prior administrative medical findings and finds the opinion of Dr. Rosamond concerning the claimant's physical limitations to be more persuasive because it is supported by medical signs and findings, is consistent with the medical record and consistent with activities of daily living subsequently discovered, such as painting the house and mowing the lawn. The claimant has received only conservative treatment for her degenerative disc disease, and her seizure disorder was controlled during the period at issue.

(Tr. 1994). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) (2017). As noted below the ALJ equated painting and mowing to medium exertional work, not light work. (Tr. 1991). When discussing Plaintiff's degenerative disc disease, the ALJ generally refers to over a dozen medical records with no particular citation supporting any of the particular findings. (Tr. 1989). Similarly, the ALJ generally refers to Plaintiff's treatment of her seizure disorder, making it difficult to discern within these records where the ALJ is drawing information. Even if this generalization can be considered merely a defect in opinion writing and forgiven, *see Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008), the ALJ did not address the supportability factor.

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1) (2017). In articulating how she considers the supportability factor, an ALJ may properly consider the physician's own treatment notes, the other evidence considered, and whether the physician examined the claimant, among other things. *Starman v. Kijakazi*, 2:22-cv-0035-SRC, 2021 WL

8

4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases). There is no suggestion in the ALJ's order that she considered this factor.[6]

The ALJ's assessment of Dr. McGraw's opinion is slightly more detailed. The ALJ found Dr. McGraw's opinion unpersuasive. Dr. McGraw opined that Plaintiff should be limited to sedentary work (lifting/carrying no more than 10 pounds and standing/walking no more than 2 hours and sitting nor more than 6 hours in an 8-hour workday).[7] (Tr. 2139-2140). The ALJ found this opinion not persuasive for "the reasons noted above" and elaborated that Plaintiff engages in conduct that would be considered medium exertional work (painting and mowing the lawn), but that her activities of daily living demonstrate an ability to do light work. (Tr. 1991). The ALJ goes on to indicate that the opinion is inconsistent with subsequent medical records and generally cites to Comtrea health records from July 28, 2022, to July 19, 2023, (Tr. 3680-3841), and medical records from Interventional Pain Institute from May 17, 2016, to August 15, 2023. (Tr. 3842-3925). There is no specific indication of how Dr. McGraw's opinions are inconsistent with the cited records. When Dr. McGraw's opinion is mentioned again, the ALJ refers to various diagnostic testing (without citation to the record), and generally refers to Plaintiff's own statements of her ability (again without citation to the record). The ALJ's explanation in finding this opinion unpersuasive is wanting in detail, making meaningful review of the same impossible.

Finally, as to Dr. Morgan's opinion[8] that Plaintiff met the listing requirement 12.08,[9] the ALJ appears to have rejected the opinion outright because, at the time of the opinion, "the claimant had engaged in sustained period of noncompliance with appropriate medical treatment." (Tr.

---

[6] Defendant's suggestion that an ALJ need only recite the opinion and refer to general findings is not convincing.
[7] See 20 C.F.R. § 404.1567(a).
[8] Dr. Morgan is a consultative examiner who evaluated the medical record upon reconsideration of Plaintiff's subsequent 2021 application. (Tr. 2124-2133).
[9] Listing 12.08 refers to personality and impulse-control disorders.

9

1994). The ALJ elaborated that the Dr. Morgan failed to follow "the regulatory requirement of assessing disability based on following appropriate medical treatment." (Tr. 1995). While the ALJ mentions that the opinion is not consistent with the record, there is no articulation of supportability and again no detail to make a meaningfully review possible.

In sum, the ALJ failed to adequately explain why she considered the medical opinions persuasive or unpersuasive because she failed to articulate how they are (or are not) consistent with other medical sources and supported by objective medical evidence.

2. *RFC*

Even if the ALJ erred in addressing opinion evidence, remand is not required if substantial evidence nonetheless supports the ALJ's decision. *See, e.g.*, *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 (2nd Cir. 2022) (unpublished summary order). As indicated above, the ALJ found that Plaintiff was capable of light work with various additional limitations that accounted for various mental and physical limitations found. (Tr. 1987). However, as with the ALJ's assessment of the opinion evidence, the decision mostly provides only general citations to the record that make it largely impossible for the Court to determine what substantial evidence supports the ALJ's findings.

For example, the ALJ states that: "[t]he evidence shows the claimant is able to stand, move about and use her arms, hands and legs in a satisfactory manner within the assigned residual functional capacity." (Tr. 1989). To support this conclusion, the ALJ notes that Plaintiff engaged in one-time activities—painting her house, having a baby in April 2021, building a shed in March 2022, and babysitting in January 2023. (Tr. 1989). The ALJ generally refers to hundreds of pages of the record to support these statements. In his brief, the Acting Commissioner provides particular citations that provide a more detailed picture of Plaintiff's activities. Plaintiff built the shed with

10

the assistance of two other people to avoid paying rent to store her things.  (Tr. 3048).  Her pregnancy increased hip pain for which she requested additional steroid injections "for severe pain control."  (Tr. 3676).  She painted her trailer after an inspection necessitated repairs, and she fell and broke her toe while doing so.  (Tr. 39, 3448, 3741).  It is unclear whether the ALJ took into account that these activities were limited, one-time events for which Plaintiff had assistance and/or which exacerbated her symptoms.  Certainly, engaging in singular and necessary activities does not indicate that Plaintiff can work a full-time job.  *See Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work.").[10]

The errors in this matter cannot be found harmless.  Even though "a deficiency in opinion writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case," the lack of clarity in the decision does not allow for adequate review.  *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019) (citations and quotation marks omitted).  Taken together, the ALJ's failure to appropriately discuss the opinion evidence and generalization about the evidence that supports the RFC make it impossible for the Court to consider whether the ALJ's conclusions are supported by substantial evidence.  The Court must remand this matter for the Acting Commissioner to comply with 20 C.F.R. § 404.1520c and to indicate what substantial evidence supports the RFC finding.[11]

---

[10] In addition, the fact that Plaintiff "was pregnant and delivered a baby," (Tr. 1989), "does not, per se, mean she is not disabled," *Garrison v. Celebrezze*, 239 F. Supp. 34, 35 (W.D.S.C. 1965).  Without a detailed explanation of why that fact has any relevance here, the Court finds the ALJ's reference to it misplaced.  *See Tilton v. Colvin*, 184 F. Supp. 3d 135, 146 (M.D. Pa. 2016) ("The undersigned agrees with other Courts that the mere fact that a claimant is able to become pregnant and bear children does not contradict disability[.]"); *Parker v. Astrue*, 5:09-cv-05240, 2010 WL 4683893, at *5 (W.D. Ark. Nov. 10, 2010) ("Simply because a person becomes a parent does not indicate that he or she is not disabled.").

[11] In light of this conclusion, it is unnecessary to address Plaintiff's third argument at this time.

\* \* \*

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Acting Commissioner for further consideration.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 26th day of March 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE